Jacob Sohnen & Sons Feather Co., Inc. v. Commissioner. Ernest Sohnen and Sylvia Sohnen v. Commissioner. Ralph Sohnen and Lillian Sohnen v. Commissioner.
Jacob Sohnen & Sons Feather Co. v. Commissioner
Docket Nos. 82025-82027.
United States Tax Court
T.C. Memo 1962-250; 1962 Tax Ct. Memo LEXIS 59; 21 T.C.M. (CCH) 1328; T.C.M. (RIA) 62250; October 24, 1962
Eugene F. Roth, Esq., One E. 57th St., New York, N. Y., for the petitioners. Rudolph J. Korbel, Esq., Michael D. Weinberg, Esq., and John J. O'Toole, Esq., for the respondent. MULRONEY Memorandum Opinion MULRONEY, Judge: In these consolidated cases the respondent determined deficiencies in income tax and excess profits tax and additions thereto, as follows: Addition to
Dkt.
Tax, § 293(b),
No.
Year
Taxpayer
Kind of Tax
Deficiency
I.R.C. 1939
82025
6/30/51
Jacob Sohnen & Sons
Income & Excess Profits
$53,512.21
$26,756.11
Feather Co., Inc.
6/30/52
Jacob Sohnen & Sons
Income & Excess Profits
39,912.07
20,851.40
Feather Co., Inc.
82026
1951
Ernest Sohnen & Sylvia
Income
23,323.22
11,661.61
Sohnen
82027
1951
Ralph Sohnen & Lillian
Income
23,197.30
11,598.65
Sohnen
*60 The first issue, and the only one reached, is whether respondent's determinations of deficiencies are barred by the three-year statute of limitations (section 275(a) [1] and it is admitted they are unless petitioners filed false or fraudulent returns with intent to evade tax within the provisions of section 276(a). The petitioner, Jacob Sohnen & Sons Feather Co., Inc., was a corporation engaged in the business of buying and selling feathers and down, with its principal place of business for the periods here involved in Brooklyn, New York. The returns for fiscal years ending June 30, 1951 and June 30, 1952, were filed with the district director of internal revenue for the first district of New York. The petitioners, Ernest Sohnen and Sylvia Sohnen, are husband and wife. Their joint return for the calendar year 1951 was filed with the district director of internal revenue for the first district of New York. The petitioners, Ralph Sohnen and Lillian Sohnen are husband and wife. Their joint return for the calendar year 1951 was filed with the district director of internal revenue for the first *61 district of New York. During the year 1951 Ernest Sohnen and Ralph Sohnen were the officers of the Sohnen Corporation, each owning approximately 50 percent of the outstanding stock of said corporation. Ernest and Ralph Sohnen had exclusive and complete control of the management and operation of the Sohnen Corporation during the year 1951. Kestenbaum Feather and Down Corporation was engaged in the business of buying and selling feathers and down during the years in question. Paul Kestenbaum and his brother Bernard were the officers and equal shareholders of the Kestenbaum Corporation. Respondent's determinations of deficiencies are based entirely on the following alleged unreported cash sales of quantities of China duck feathers and down by Jacob Sohnen & Sons Feather Co., Inc. to the Kestenbaum Corporation: Date
Amount
Mar. 9, 1951
$ 2,410.00
Apr. 9, 1951
750.00
Apr. 12, 1951
48,371.00
Apr. 19, 1951
3,250.00
June 25, 1951
10,300.00
June 28, 1951
9,892.00
July 25, 1951
18,444.85
July 30, 1951
9,486.35
Aug. 6, 1951
7,417.50
Aug. 7, 1951
1,957.00
Aug. 30, 1951
11,760.00
Sept. 11, 1951
16,376.00
Total
$140,414.70 Respondent's determination *62 of deficiencies against the individual petitioners was on the basis of their receipt of dividend income arising from the above alleged unreported sales. Assessment and collection of all of the asserted deficiencies against all petitioners are barred by the statute of limitations contained in section 275(a), unless respondent has established by clear and convincing evidence that the returns filed by petitioners were false or fraudulent with intent to evade tax within the meaning of section 276(a). As applied to this case, respondent's burden was to show by clear and convincing evidence that the cash sales transactions actually occurred. Each and all of them were denied by all petitioners. While not entirely free from doubt, we are of the opinion respondent has not successfully borne his burden. Respondent relies almost entirely on the testimony of the two Kestenbaums. Paul Kestenbaum told a story which begins in February 1951 when Ralph Sohnen approached him at a feather sale and offered to sell him feathers and down and quoted a price of $5.50 a pound for down and at that time Ralph Sohnen said: "I would sell you under one condition, that you will have to pay cash" - and he also *63 said that he would give no receipt for cash paid. Paul said he talked it over with his other shareholder; that, since the price was cheap, they decided to buy and on March 9, 1951 they purchased from Sohnen Corporation 437 pounds of grey duck down at a total price of $2,410. Of this price, $6.50 was charged for bags. He testified the cash was obtained by drawing a check to J. Sohnen in the amount of $2,410, then endorsing the name J. Sohnen on the back of the check with the name B. Kestenbaum beneath, and taking it to the bank and cashing it. He said he received no invoice and no receipt from Sohnen but he told his bookkeeper the details of the purchase and she prepared what he called an invoice reflecting what he said was the poundage and the price he said he paid. The bookkeeper, some time later, posted this so-called invoice in the corporation's purchase book and entries were made in the cash disbursements journals as "accounts payable-Sohnen" and a credit to cash. Both Kestenbaums related 11 other cash transactions generally carried on by both Sohnens where they purchased feathers and down from Sohnens. They said that upon advice of their accountant they stopped using the check *64 to J. Sohnen method of securing cash (involving their endorsing J. Sohnen's name on the check) after the April 19, 1951 transaction; that they borrowed some $48,000 for the April 12th transactions and some $15,000 for the June transactions; and that sometimes they raised cash by merely cashing company checks or increasing their payroll checks so the bank would be unaware that they were making cash withdrawals. The Kestenbaums said some of the book entries were not made at the time of the transactions but were entered later. They testified the above-mentioned loans were made from relatives and one close friend. There were no notes given and about all the books show is entries made with respect to the loans when, according to the books, they were paid. There was not any documentary proof to substantiate the Kestenbaum story. According to their story, they paid over $140,000 in cash for merchandise - as much as $48,000 at one time - and never received a receipt for any payment. They said some of the merchandise was transported in their car but some was transported by a commercial trucker. Petitioners called the trucker they named and he said his records showed no hauling from Sohnen *65 to Kestenbaum during the period involved. None of the persons who the Kestenbaums said loaned them money were called as witnesses. There is no use reviewing the evidence as to each separate transaction. There were many conflicting statements made by the Kestenbaums and the entries in their books were most irregular and misleading. The books are full of erasures and entries that were purportedly made at the same time appear in different colored ink. If there be any truth in the Kestenbaums' story about cash purchases from Sohnen, then it appears reasonably evident from this record they lied about the prices they paid for the feathers and down they bought. It is quite well established that if they purchased the feathers and down at the price they recorded in their books they made no bargain purchases. It was quite well established by petitioners' evidence that the market for down and feathers during the period in question was close to the price the Kestenbaums said they paid. There was no evidence that Kestenbaums made any abnormal profit during these years. Ralph Sohnen did not testify. Ernest Sohnen testified he was the president of the corporation and in sole charge of its business; *66 that Ralph was only a subordinate handling routine matters; that Ralph was living in Arizona and suffering from obesity and could not attend the trial. He testified Ralph weighed "approximately 380 pounds and [was] frequently in and out of the hospital with related ailments as a result of his obesity." Ernest Sohnen denied each and every transaction. The evidence is that Sohnen's books and records showed no sales to Kestenbaum during this period; that the firm's income tax returns were prepared from the books by an accounting firm; and Ernest testified the books contained all of the firm's transactions. We must assume no support for the Kestenbaum story was available from any analysis of Sohnen's books or records. The Kestenbaums said in fiscal 1951 about one-half their business was dealing in raw material; that they purchased that year about $100,000 to $120,000 of raw feathers and down and therefore about three-fourths of all of their purchases of raw material (about $74,000) were cash purchases from Sohnen. Respondent's counsel stated at the outset that the "case boils down to the credibility of the witnesses." The issue is not the mere credibility of the Kestenbaums as witnesses *67 but whether all of respondent's evidence meets the clear and convincing evidence test that is required of one who asserts fraud. ; . By their own story the Kestenbaums are cast into the role of participants, if not conspirators, in a fraudulent tax evasion scheme - which fact they both admitted. While the Kenstenbaums were glib, evasive, and we think untruthful witnesses, we do have some doubts that their story is a complete fabrication. They both stated they realized large cash withdrawals had to be merchandise purchases to avoid income tax trouble. We cannot hold that such a story of cash purchases, standing completely unsupported by any evidence or documentary evidence of any kind that ties in the Sohnens, meets the clear and convincing test. We hold, on the record presented, petitioners did not file false and fraudulent returns with intent to evade tax for the years in question and consequently the deficiencies for the years in question are barred by the statute of limitations. Decisions will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1939, as amended.↩